# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ISRAEL LAMAS, | 1:09-cv-00582 OWW GSA HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| KATHLEEN ALLISON, Acting Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent, Kathleen Allison[1], is represented by David N. Sunada, Esq., of the Office of the Attorney General of the State of California.

## RELEVANT HISTORY[2]

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR) following his convictions in Orange County Superior Court in 1993 of second degree murder, attempted second degree murder, and enhancements for use of a firearm and use of a firearm with great bodily injury. He is serving a sentence of twenty-six years to life

---

[1] Ken Clark is no longer the warden at California Substance Abuse Treatment Facility and State Prison, Corcoran, where Petitioner is housed. Kathleen Allison is currently the acting warden. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kathleen Allison is hereby substituted as Respondent in this matter.

[2] This information is taken from the state court documents attached to Respondent's answer.

1

with the possibility of parole.

Petitioner does not challenge his underlying conviction; rather, he claims the California Board of Parole Hearings ("Board") violated his due process rights in its May 2, 2007, decision finding Petitioner unsuitable for parole. Petitioner contends he was denied his due process rights when the Board failed to support its finding that Petitioner posed a risk of current dangerousness.

Petitioner filed a habeas court petition challenging the Board's 2007 decision in the Orange County Superior Court. The petition was denied on May 27, 2008, for failure to support claims by supplying an adequate record. Petitioner next filed a habeas petition in the California Court of Appeal on July 18, 2008. The appellate court summarily denied the petition on July 31, 2008. On August 25, 2008, Petitioner filed a habeas petition in the California Supreme Court. The petition was summarily denied on February 25, 2009.

Petitioner filed the instant federal petition for writ of habeas corpus on March 31, 2009. Respondent filed an answer to the petition on July 22, 2010. Petitioner did not file a traverse.

## STATEMENT OF FACTS[3]

On June 7, 1992, at approximately 4:41 a.m., Orange County Sheriff's deputies heard gunshots while patrolling in the City of Stanton. They responded to the area of the railroad tracks south of Orangewood and west of Santa Rosalia and found two male subjects, both victims of gunshot wounds. One of the victims was later identified as Jesse Hubnero. He was found dead at the scene with a single gunshot wound to the head. The second victim, later identified as Michael Moses Munoz, had sustained three gunshot wounds and was transported to the UCI Medical Center for emergency treatment. The two male victims were identified as gang members of the Lomos Gang from Rosemead and South Gabriel area. Victim Hubnero had a street moniker of "Tutti." The second victim, Munoz, had a street moniker of "Sniper."

Two female juveniles who were from the City of Rosemead were contacted at the scene. They were later identified as Delores Villalobos and Rosemary Guiterro. They were both in the company of the victims and were present when the shooting took place. According to Villalobos

---

[3] This information is derived from the summary of the crime set forth in the Board's decision.

2

and Guiterro, on June 6, 1992, they and two additional females had driven to Orange County in Guiterro's vehicle and picked up Robert Anaya. They all drove to a party on Date Street in Stanton where they met Petitioner, also known by the moniker of "Rascal." At approximately 1:15 a.m., Villalobos, Guiterro, and Anaya left the party and drove back to Los Angeles where they dropped the other girls off at the residence.

They then drove to the residence of a Lomos gangmember with the moniker "Gremlin." They all exited the vehicle. Some of the Lomos gangmembers gave Anaya a hard time and made him cross out some of the gang graffiti that was on the wall in their neighborhood. Reportedly the graffiti was from Anaya's old neighborhood. Villalobos, Guiterro, and Anaya then left Gremlin's house accompanied by the victims Munoz and Hubnero. They returned to the party in Stanton and found out that the party was over. They then met Petitioner who advised them where they could purchase cocaine. After Petitioner got into the vehicle, they drove to an unknown residence and acquired some cocaine.

Petitioner then guided them to a dead end of Orangewood by the railroad tracks where they parked. At that time, Munoz began painting graffiti on a wall on the east side of the railroad tracks. Petitioner told Hubnero to tell Munoz to stop. Hubnero told Petitioner that Munoz was his "homeboy" and that he would not tell him to stop. Petitioner then shot Hubnero once in the head and Hubnero fell to the ground. Petitioner then walked rapidly toward victim Munoz. He fired one shot at him. Munoz turned around and started to run. Petitioner fired three more shots at him. Munoz fell to the ground. Petitioner continued to shoot at him from approximately three to four feet. Petitioner and Anaya then fled the area.

## DISCUSSION

I.  Standard of Review

Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v.

1 Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a
2 habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the
3 petition is not challenging [her] underlying state court conviction.'").

4       On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act
5 of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its
6 enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries
7 v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th
8 Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy,
9 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).
10 The instant petition was filed after the enactment of the AEDPA. In this case, however, the state
11 courts did not reach the merits of Petitioner's claims. The first habeas petition was denied by the
12 Orange County Superior Court as procedurally defective in that Petitioner had failed to supply an
13 adequate record. The subsequent habeas petitions filed in the California Court of Appeal and
14 California Supreme Court were denied without comment. We presume that those courts denied
15 the petitions for the same reasons expressed by the superior court. Ylst v. Nunnemaker, 501 U.S.
16 797, 803 (1991). Since no state court reached the merits of Petitioner's claims, we must review
17 legal issues de novo and factual issues for clear error. Pirtle v. Morgan, 313 F.3d 1160, 1167-68
18 (9th Cir. 2002).

19 II.    Review of Petition

20       There is no independent right to parole under the United States Constitution; rather, the
21 right exists and is created by the substantive state law which defines the parole scheme. Hayward
22 v. Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v. Allen, 482
23 U.S. 369, 371 (1987); Pearson v. Muntz, No. 08-55728, 2010 WL 2108964, * 2 (9th Cir. May
24 24, 2010) (citing Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174
25 (2005)); Cooke v. Solis, No. 06-15444, 2010 WL 2330283, *6 (9th Cir. June 4, 2010).
26 "[D]espite the necessarily subjective and predictive nature of the parole-release decision, state
27 statutes may create liberty interests in parole release that are entitled to protection under the Due
28 Process Clause." Bd. of Pardons v. Allen, 482 U.S. at 371.

In California, the Board of Parole Hearings' determination of whether an inmate is suitable for parole is controlled by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b). Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for release. "Circumstances tending to indicate unsuitability include:

> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
>
>> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
>> (C) The victim was abused, defiled or mutilated during or after the offense.
>> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
>
> (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
>
> (3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.'
>
> (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
>
> (5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.
>
> (6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

Section 2402(d) sets forth the circumstances tending to show suitability which include:

(1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime. The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.

(7) Age. The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2402(d)(1)-(9)

The California parole scheme entitles the prisoner to a parole hearing and various procedural guarantees and rights before, at, and after the hearing. Cal. Penal Code § 3041.5. If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute. Id. In addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5. The denial of parole must also be supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential. In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause. Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d

606, 608-609 (9th Cir. 2010). Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state court's application of the some evidence rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence. Hayward v. Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." In re Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted). As to the circumstances of the commitment offense, the Lawrence Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.

In addition, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prison remains a danger to the public. It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." In re Lawrence, 44 Cal.4th at 1212.

"In sum, a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" Cooke v. Solis, 606 F.3d 1206, 1214 (9th Cir. 2010) (emphasis in original) (citing Hayward v. Marshall, 603 F.3d at 560).

A.    2007 Board Decision

The Board found Petitioner unsuitable for parole based on the circumstances of the commitment offense, prior record of violence, and institutional behavior.

As previously set forth, the commitment offense involved Petitioner shooting and killing one individual and shooting and seriously injuring another individual over gang graffiti. The Board noted that multiple victims were attacked and injured pursuant to Cal. Code Regs., tit. 15, § 2402(c)(1)(A). The evidence supports this finding. Petitioner also committed the offense in a dispassionate and calculated manner. Cal. Code Regs., tit. 15, § 2402(c)(1)(B). The Board noted that Petitioner shot the first individual, who was unarmed, point blank to the head. He then fired at the second individual. When that individual turned and fled, Petitioner shot him down from behind and then shot him again from a distance of 3 to 4 feet. Given these facts, there is some evidence that the offense was dispassionate and calculated as that of an execution-style murder. The Board also found that Petitioner committed the offense in a manner which demonstrates an exceptionally callous disregard for human suffering. Cal. Code Regs., tit. 15, § 2402(c)(1)(D). There is no evidence to support this finding. There is nothing in the record that shows Petitioner tortured or prolonged the victim's suffering. Finally, the Board determined that the motive for the crime was trivial. Cal. Code Regs., tit. 15, § 2402(c)(1)(E). In support, the Board stated that the motive was gang-related and involved Petitioner murdering one and attempting to murder another because of graffiti they had painted. The evidence supports this finding. Therefore, there was some evidence to support the Board's determination that the offense was especially heinous, atrocious or cruel.

The Board also noted Petitioner's prior violent criminal history as an indicator of unsuitability. Cal. Code Regs., tit. 15, § 2402(c)(2). He had been arrested as a juvenile for possessing a stolen bike. Petitioner had been involved in several fights in school as a juvenile. He had been arrested for assault and battery. Later, he was arrested for vehicle theft. In light of these offenses, there was some evidence to support the Board's finding that Petitioner had a prior record of violence.

The California Supreme Court has held that "[t]he nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole." In re Rosenkrantz, 29 Cal.4th 616, 682 (2002). However, in cases where prisoners have served their suggested base terms and have demonstrated strong evidence of rehabilitation and no other evidence of current dangerousness,

8

the underlying circumstances of the commitment offense alone rarely will provide a valid basis for denying parole. <u>In re Lawrence</u>, 44 Cal.4th 1191, 1211 (2008).  In this case, Petitioner has not yet served his base term of twenty-six years, he has not demonstrated strong evidence of rehabilitation, and the Board did not rely only on the commitment offense and prior criminal history.

The Board found that Petitioner had continued his violent and assaultive behavior in prison.  Cal. Code Regs., tit. 15, § 2402(c)(6).  In 2000, Petitioner sustained a serious rules violation for combat.  In 2007, he sustained a second serious rules violation for participating in a riot.  These violent incidents certainly are probative of a current risk of danger.

The Board also considered Petitioner's positive factors.  Although Petitioner's self-help programming was limited, he was currently involved.  It was recommended that he continue his involvement since drugs and alcohol had played a significant role in his life.  He had viable employment plans, although his residence plans were deemed lacking.  He was commended for a good work record.  Nevertheless, the Board concluded that the positive aspects of Petitioner's behavior did not outweigh the factors of unsuitability.  The Board determined that the circumstances of Petitioner's commitment offense and prior criminal history, along with his violent institutional behavior, were more probative of a danger to the public should Petitioner be released.  The Board's determination was supported by at least some evidence.  Accordingly, federal habeas corpus relief is unavailable.

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and

2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to

1  Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served
2  and filed within fourteen (14) days after service of the objections.  The Court will then review the
3  Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that
4  failure to file objections within the specified time may waive the right to appeal the District
5  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

7      IT IS SO ORDERED.
8   Dated:   **September 16, 2010**                    **/s/ Gary S. Austin**
                                               UNITED STATES MAGISTRATE JUDGE